```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9-26-11
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
INSTINET INCORPORATED, INSTINET         :
HOLDINGS INCORPORATED, INSTINET         :
GROUP, LLC, and INSTINET, LLC,          :
                                        :
                    Plaintiffs,         :
                                        :  No. 08 Civ. 7141 (JFK) (RLE)
     -against-                          :
                                        :  **MEMORANDUM OPINION AND ORDER**
ARIEL (UK) LIMITED,                     :
                                        :
                    Defendant.          :
------------------------------------X

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Defendant Ariel (UK) Ltd.'s ("Ariel" or "Defendant") motion for leave to amend its answer. For the reasons set forth below, the motion is denied and a scheduling order is in effect.

## I. Background

    This action arises from a dispute regarding the scope of Ariel's rights in the computerized securities trading software developed by the Plaintiff Instinet entities (collectively "Instinet" or "Plaintiff") pursuant to a series of licensing agreements signed in the 1970's. Unless otherwise noted, the facts below are taken from Instinet's Complaint and Ariel's Answer.

**A. The Parties and Their Business Relationship**

    Instinet is a successor in interest to Institutional Networks Corporation, which was founded in 1969 to develop and

operate a computerized trading system for securities. Ariel is a British company established in 1971 by a group of London-based merchant banks which also sought to establish a computerized trading system that could trade blocks of stock between large institutions.

In or around 1970, Instinet obtained both European and American patents on an early computerized securities trading system. Ariel was then attempting to develop its own trading system and entered into a licensing agreement with Instinet on August 11, 1972, under which Ariel could develop its own computerized securities trading system based on the design of the Instinet System. The agreement had a term of 14 years, subject to certain conditions that would provide Ariel licensing rights under the agreement in perpetuity.

On December 24, 1975, Ariel sent a proposal to Instinet's attorney by cable to renegotiate the 1972 Agreement. Under the terms of this proposal, Ariel would pay Instinet $175,000 provided that, among other things, Ariel would receive "a non-exclusive license in all those territories where Instinet has patents granted or pending" and "full and unencumbered access to and right to make use of the Instinet Two System and documentation on same terms as though [the 1972 Agreement] were still in force." This proposal was subject to the condition that the parties' attorneys would "draw up such legal

-2-

documentation . . . as will give effect to the preceding agreement and conditions."

On December 26, 1975, Instinet responded by telex, accepting the offer on the "terms set forth in [the] Ariel cable." In the telex, Instinet also urged that Ariel's lawyers "send confirming papers [to Instinet's lawyers] soonest."

In April 1976, the parties finalized their agreement by signing a written contract with an effective date of December 31, 1975. ("1975 Agreement"). The 1975 Agreement provided that the 1972 Agreement "be treated as terminated" after the effective date, "on the basis the obligations of both parties . . . shall wholly cease on that date."

**B.   Procedural History**

In June 2008, Ariel sent a demand letter to Instinet, claiming that it has a right of ingress in Instinet's current trading technology and software. On August 11, 2008, Instinet commenced this action seeking a declaratory judgment addressing the rights and obligations of the parties. Instinet requested that the Court declare: (a) "[t]hat the 1975 Agreement terminated the 1972 Agreement in its entirety"; (b) "[t]hat pursuant to the 1975 Agreement, the technology and software being licensed to Ariel is limited to such technology and software as it existed no later than June 30, 1976"; (c) "[t]hat Ariel has no rights in or to Instinet's current technology or

software"; and (d) "[t]hat Ariel does not have any of the rights claimed in the Demand Letter, whether pursuant to the 1972 Agreement, the 1975 Cable Agreement, the 1975 Agreement, or otherwise."

On September 9, 2009, Instinet filed a motion for summary judgment, asserting that the 1975 Agreement is both integrated and unambiguous, and thus it is entitled to the requested declaratory relief as a matter of law.  On March 5, 2010, the Court held that the 1975 Agreement is integrated, unambiguous, and terminated the parties' prior agreement in its entirety, and that the 1975 Agreement did not provide Ariel perpetual rights to technology developed by Instinet.  Whether Instinet's current securities trading platform still incorporates components of the 35-year-old computer technology to which Ariel has licensing rights under the 1975 Agreement was an issue of material fact, however, so the Court declined to declare that Ariel had no rights in technology that comprises Instinet's current computerized securities trading platform. Instinet, Inc. v. Ariel (UK) Ltd., No. 08 Civ. 7141, 2010 WL 779324, at *4 (S.D.N.Y. Mar. 5, 2010).

In July 2010, after the Court denied Ariel's motion for reconsideration of its March 5, 2010, Memorandum Opinion and Order, Ariel requested that Instinet produce the source code and the documentation of the Instinet II System (referred to as the

-4-

"1976 software") "as at midnight of June 30, 1976." (Bainton Decl., Ex. D.) After claiming that Ariel's request was barred because discovery had closed, Instinet admitted that it did not have "in its possession, custody, or control a copy of the 1976 software or documentation." (Bainton Decl., Ex. F.) In response, Ariel provided Instinent with a written "notice of election to rescind" the 1975 agreement based on Instinet's breach of Paragraph 5.4 of the 1976 Agreement.

At the pretrial conference on September 8, 2010, the Court set a schedule for cross-motions for summary judgment. Briefs were due on November 5, 2010, responses by December 10, 2010, and replies by January 7, 2011. Just before Instinet was set to file its renewed motion for summary judgment, Ariel made a motion for leave to amend its Answer to include the affirmative defense of rescission.

## II. Analysis

**A.  Legal Standard**

Each party proffers that a different standard should govern Ariel's motion for leave to amend: Ariel proposes the liberal Rule 15(a) standard, while Instinet asserts that the stricter Rule 16(b)(4) standard should apply. In fact, the correct standard to apply here is Rule 15(d), which governs the amendment of pleadings to include "any transaction, occurrence,

-5-

or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

Rule 15(d) specifically governs motions to amend claims where the occurrences giving rise to the claims arise after the filing of the pleading to be amended. "Where a plaintiff's proposed additions to his complaint principally recite transactions, occurrences or events that have transpired since the date of the pleading sought to be supplemented, the motion is technically categorized under Rule 15(d) . . . as opposed to Rule 15(a)." Flaherty v. Lang, 199 F.3d 607, 610 (2d Cir. 1999); see Bornholdt v. Brady, 869 F.2d 57, 68 (2d Cir. 1989). Here, Ariel contends that the event giving rise to the instant motion is Instinet's failure to produce the 1976 software. Ariel sought the software after the date of the pleading and therefore, the court will apply Rule 15(d) to evaluate Ariel's motion for leave to amend its Answer.[1]

A court may grant a motion pursuant to Rule 15(d) "in the exercise of its discretion, upon reasonable notice and upon such terms as may be just. Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the

---

[1] It should be noted that the Rule 15(d) standard is functionally identical to the standard set forth in Rule 15(a). See Gittens v. Sullivan, 670 F. Supp. 119, 123-24 (S.D.N.Y. 1987) ("The standard for the exercise of discretion on a motion to supplement the pleadings [under Rule 15(d) ] is the same as that for . . . a motion to amend a complaint under Rule 15(a).").

proposed pleading, or futility, the motion should be freely granted." Quarantino v. Tiffany & Co., 71 F.3d 58 (2d Cir. 1995); see also Weeks v. New York State, 273 F.3d 76, 88 (2d Cir. 2001). The Second Circuit's admonition to grant leave freely, however, "does not mean that all amendments should be granted under all circumstances." Sobel v. Yeshiva Univ., 477 F.Supp. 1161, 1168 (S.D.N.Y. 1979).

**B.   Undue Delay and Prejudice**

Ariel contends that its motion will not cause undue delay because the event that gave rise to Ariel's claim of rescission--specifically, Instinet's inability to provide the 1976 version of the Instinet system--did not occur until August 2010. According to Ariel, Instinet's inability to provide the 1976 software was an "unanticipated turn of events," and Ariel could not have made its rescission motion before the event occurred. (Def. Mem. at 6.)

Ariel admits in its reply memorandum, however, that David Manns, an employee of Ariel in the 1970s, had informed Ariel that "because Instinet II was still in development as of June 30, 1976, no copy of Instinet II was 'frozen' for posterity as at midnight June 30, 1976." (Reply Mem. at 6-7.) Therefore, as early as July 1, 1976, Ariel was on notice that Instinet would be unable to provide a copy of the June 30, 1976 software, as Instinet was still making changes to it.

-7-

Additionally, David Manns was deposed on April 16, 2009, nearly a year before the entry of the March 5, 2010 Opinion and Order. During this deposition, Manns again explained that Instinet II was not "frozen" on July 30, 1976. At that time, Ariel and its counsel should have known that Instinent would be unable to provide a copy of the June 30, 1976 software. Ariel offers no explanation for its failure to bring this motion to amend after deposing Manns. Therefore, granting this motion is barred by undue delay. See Petramale v. Local Union 17, 775 F. Supp, 775, 782 (S.D.N.Y. 1986), rev'd on other grounds, 847 F.2d 1009 (2d Cir 1988) (denying motion to amend where plaintiff was made aware of an additional argument at a discovery deposition); Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983) (refusing to allow an amendment to add an affirmative defense two years and nine months after it could have been asserted, noting that defendant offered no compelling reasons for the delay).

Permitting Ariel to amend at this late juncture would result in substantial prejudice to Instinet, as it would require the reopening of discovery and further delay the resolution of this lawsuit. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 332 (1971) (holding that whether to reopen discovery is in the "sound discretion" of the trial judge). Here, allowing plaintiff now to litigate matters that he "had an

-8-

opportunity, but neglected, to litigate," id. at 332, would impose an injustice to defendants.

## C.   Futility

Finally, if the proposed amendment is deemed to be futile, "it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). "An amendment to pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002). Because rescission of a contract is an equitable remedy, Maldonado v. Valsyn, S.A., 390 Fed. App'x 27 (2d Cir. 2010), the defenses such as laches would apply. If laches operates to bar Ariel's rescission claim, permitting Ariel to amend its complaint to include rescission of contract would be futile. See U.S. v. Lemos, 08 Civ. 11144, 2010 WL 1192095 (S.D.N.Y. Mar. 26, 2010) (basing a 12(b)(6) dismissal on a laches defense).

Here, Ariel is attempting to access the 1976 software for the first time in nearly 35 years. The doctrine of laches "is based upon maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to the adverse party, operates as bar in court of equity." State of Kansas v. State of

Colorado, 514 U.S. 673 (1995) (citing Black's Law Dictionary). Because Ariel has failed to preserve its rights with respect to the software, it may not base rescission of the 1976 contract on Instinet's failure to produce such software.  Even if the instant motion were granted, laches would bar Ariel from rescinding the contract.  Therefore, Ariel's motion is futile. See TBC Consoles, Inc. v. Forecast Consoles, Inc., No. 05 Civ. 2756, 2009 WL 2337138 (S.D.N.Y. July 27, 2009) (denying plaintiff's motion to amend on the grounds that it is futile, because the plaintiff had not offered any justification for its failure to assert the claims in its original complaint); American Stock Exch., LLC v. Mopex, Inc., 230 F. Supp. 2d 333, 336 (S.D.N.Y. 2002) (denying defendant's motion for leave to amend on the grounds that it was futile, noting that defendant's proposed additions were time-barred).

## III. Conclusion

For the foregoing reasons, the defendant's motion is denied. Instinet entities ("Instinet") is hereby directed to file a motion for summary judgment within two weeks. Ariel UK Limited ("Ariel") is directed to respond to the motion within 30 days, and Instinet is ordered to reply to Ariel's submission within 15 days.

**SO ORDERED.**

Dated:   New York, New York

September 26, 2011

_____
JOHN F. KEENAN
United States District Judge